### REUBEN SMITH v. ALBERT R. SMITH.

No recovery can be had in the action on book where the contract is *executory*, and unrescinded, though in part executed.

Though an *entire* contract for the sale of real and personal estate may be required to be in writing, so as to be operative as to the personal property ; yet, where the possession of the real estate had been taken under the parol agreement, improvements made, and a part of the consideration paid, the vendor cannot insist upon the statute of frauds to avoid the whole contract, and recover for the personalty in the same manner as if it had gone into the hands of the defendant without a special agreement.

THIS was an action of book account. Judgment to account having been rendered by the county court, auditors were appointed who afterwards reported, in substance, as follows :—

In the beginning of the winter of 1827–8, the plaintiff, who is the defendant's father, entered into a verbal agreement with the defendant, who had then just arrived of full age, to live with, take care of, and support him and his wife during their lives, and their children until they were of a suitable age to be put out to learn trades, and that defendant should have all the plaintiff's property, real and personal, and should pay all of plaintiff's debts, and have the benefit of plaintiff's labor and that of his wife. The plaintiff's family consisted of himself, aged 50 years, his wife, his sons, Russell, aged 3 years, Proctor, about 9 years, and Justus, about 16 years, and a daughter about 12 or 13 years. The property of the plaintiff consisted, at the time defendant took possession of it, of a farm of 50 acres, mostly cleared, lying in Goshen Gore, with a house and barn thereon, and personal property valued at $448.28.

The plaintiff and his wife had always enjoyed health, and the latter devoted her whole time, and the plaintiff nearly all his time to the business of defendant, or to his and the family's interest. The labor of plaintiff and defendant was bestowed on said fifty acres of land and another lot of land called the pine lot, which defendant purchased immediately after going into possession of plaintiff's property, and another lot called the Washburn lot, which both plaintiff and defendant claimed to own. They continued to act under this parol agreement until March, 1841, when the defendant, with his wife, to whom he had been married about a year, owing to difficulties which had arisen between plaintiff and defendant within the last year or two, removed to, and located themselves in the town of Cabot, for a permanent residence, leaving the plaintiff, his wife, and youngest son in their former habitation, and also leaving with the plaintiff, and for his benefit, certain articles of personal estate of the value of $287.66.

In addition to the plaintiff's charges for personal property, he also charged, and claimed to be allowed, for the labor of himself and wife for 13 years; for the labor of his son Justus 2 months and 16 days; for the labor of Proctor 3 years and 2 months, and for the use and occupation of plaintiff's farm 13 years, of all which it appeared the defendant had had the benefit, and which the auditors allowed as follows:—

| | |
|---|---:|
| For the use of said farm, | $ 455.00 |
| For the labor of plaintiff 13 years, | 1280.00 |
| For the labor of Justus, | 20.00 |
| For the labor of Proctor, | 200.00 |
| For the labor of plaintiff's wife, | 507.00 |
| The plaintiff also claimed, and the auditors allowed him, for cash received by defendant of Enoch Smith, for a debt due the plaintiff, | 62.50 |
| All which, together with the value of the plaintiff's personal estate delivered to the defendant at the time of making said contract, amounted to the sum of | $ 2,972.78 |

The defendant, in addition to the articles of property left with the plaintiff before stated, claimed to be allowed in offset for the improvements made by him on the farm, and repairs on the buildings, for furniture and bed clothes and stove furnished the family and left with plaintiff, for clothing furnished

the plaintiff, his wife, and children, for board of Proctor and Russell previous to their being old enough to earn their board, and for the amount of plaintiff's debts paid by defendant, for all which the auditors found that defendant was entitled to be allowed in offset, and therefore allowed him as follows :

| | |
|---|---|
| For improvements on the 50 acres and repairs, | $300.00 |
| For furniture, bed clothes, and cooking stove, | 100.00 |
| For clothing furnished the plaintiff, | 390.00 |
| For do. do. his wife, | 195.00 |
| For do. do. Proctor, | 250.00 |
| For do. do. Russell, | 195.00 |
| For boarding Russell 8 years, | 312.00 |
| For boarding Proctor 3 years, | 156.00 |
| For debts of plaintiff paid by defendant, | 87.50 |

All which, together with the property left with the plaintiff by the defendant when the latter removed to Cabot, amounted to the sum of $2,273.16, which, deducted from the amount allowed to the plaintiff, leaves a balance of $699.62 due to the plaintiff, which sum the auditors found was due from the defendant to the plaintiff, to balance book accounts between them.

The defendant filed exceptions to the report, and the county court rendered a judgment for the defendant, to which judgment the plaintiff excepted.

*J. R. Skinner,* for plaintiff.

The report shows the fact that the plaintiff and defendant, in the winter of 1828, made a *verbal* contract, by which the defendant was to take the personal property belonging to the plaintiff specified in the schedule annexed, and also the farm, and was *to live with* and support plaintiff and wife during their lives, and also the children until they were old enough to be put to trades. This was an executory contract, and by our statute void, not having been reduced to writing, the performance of which could not be enforced at law.

It cannot be claimed that defendant was not bound to account for the property, either in the performance of the contract or for its just value ; and, on a breach of that contract, equity and good conscience would dictate that plaintiff was entitled to its just value.

The breach of that contract is clearly found, for the auditors find ' that defendant was to *live with* and support,' &c. They also find that defendant removed, and located himself in Cabot for a permanent residence, and made no provision for their future support; he only left them in the occupancy of their former residence.

Then, on a breach of this contract, the defendant was liable to account to plaintiff in some form of action. The law raises the implied promise that defendant should pay plaintiff a reasonable compensation for the property and the services rendered.

It is a general rule that when a general action of assumpsit can be maintained for goods sold and delivered, and for services performed, the action on book can be maintained. In the case of *Gilman v. Peck,* 11 Vt. R. 520, the learned judge says, ' no case occurs to him where the plaintiff may main- ' tain a general action of assumpsit for goods sold and deliv- ' ered, and cannot equally maintain this form of action.' .

Is it true that the plaintiff, on the breach of this contract, could not maintain general assumpsit for the property and services sued for ?

On the delivery of the property, and the performance of the services, the defendant became accountable to plaintiff, though it may be said that no cause of action could accrue until defendant had refused to perform the verbal contract. In that event it would in no wise follow that plaintiff would not have the right to charge on book. The recent decisions go fully to establish the doctrine that where the defendant is to account for the property, the action on book can be maintained. 10 Vt. R. 478. 5 Vt. R. 451. 12 Vt. R. 13.

The mode of payment does not preclude the party to charge the articles on book. *Hall & Newton* v. *Higgins,* 2 Vt. R. 366.

If the plaintiff had performed these services, and delivered these articles charged, in the fulfilment of a *verbal contract* to sell him a farm, valued at three thousand dollars, no one would contend that the performance of that contract could be enforced at law, or that the plaintiff could claim damages for a breach of that contract. The plaintiff's remedy would be to recover for the value of the property and the services ; and it is, I apprehend, difficult to manufacture a distinction

in the form of action to be adopted, if plaintiff had delivered the articles and performed the services, without regard to the verbal contract.

The charge for money had of Smith is a separate affair, and may be recovered in this form of action.

J. Bell and B. N. Davis, for defendant.

It is contended by defendant that this suit cannot be sustained, because, at the time of the delivery of the property, &c., the right to charge on book did not exist, and the happening of no subsequent event could give him the right.

The doctrine that the right to charge on book must exist at the time of the delivery of the articles, or performance of the services, and cannot depend upon the happening of a subsequent event, is well settled. Slasson v. Davis, 1 Aik. R. 73. Ferrand v. Gage, 3 Vt. R. 326. Nason v. Crocker, 11 Vt. R. 463. Terrill v. Barker, 4 Conn. R. 344. The same rule is recognized in Starr v. Huntley, 12 Vt. R. 13. 1 Swift's Digest, 582.

The right to charge on book cannot depend upon the breach of a contract ; or, in other words, damages for the breach of a contract cannot be charged on book. 1 Swift's Digest, 582. Fry v. Slyfield, 3 Vt. R. 246. Blanchard v. Butterfield, 12 do. 451.

In all that class of cases where the neglect of the defendant to perform a contract or undertaking on his part has been recovered for in the action of book account, as in Strong v. McConnell, 10 Vt. R. 231, Whiting v. Corwin, 5 do. 451, the right existed at the time of the delivery of the articles in view of a future accountability, or rather in view of a future adjustment of the dealings between the parties.

But in this case the property was not delivered, nor the services performed, with a view to any future adjustment, but in the discharge of a present obligation originating in a past and present consideration ; that is, the defendant had undertaken and was in the discharge of a contract as a consideration of the property delivered, and the services performed. See Nason v. Crocker, 11 Vt. R. 463.

2. In relation to the statute of frauds. If the contract be one which might have been performed or completed within the year, it is not within the statute. 2 Starkie, 601. Fen-

CALEDONIA,
March,
1842.

Smith
v.
Smith.

*ton* v. *Emblers,* 3 Burr. 1278, reported in Swift's Digest, 262. 1 Salk. 280. *McLees* v. *Hale,* 10 Wendell, 426.

The contract, as found by the auditors, was that defendant was to support plaintiff and wife for life. Now this is a contract which, in the course of nature, might have been completed within the year.

If this position be correct the plaintiff's appropriate remedy should be on the agreement, as was decided in *Nason* v. *Crocker.*

But if plaintiff could not sustain a suit for the breach of an express contract, assumpsit on the implied contract undoubtedly would lie.

3. The item in the plaintiff's account, for the use of the farm, for $455.00 will come within the rule that the use and occupation of land cannot be recovered on book, and it will hardly be pretended that while the rent was accruing there were such mutual dealings between the parties as would authorize the charge, when, at the time defendant was in the use of the farm, it was equitably his, and a court of chancery would have compelled plaintiff to deed. *Case* v. *Barry,* 3 Vt. R. 332.

The opinion of the court was delivered by

BENNETT, J.—The personal property, for which the plaintiff seeks to recover in this action, went into the possession of the defendant under the contract, and also the real estate, upon which the defendant made improvements, though it has never been conveyed to him. The defendant fulfilled the contract about thirteen years, as the auditors find, in good faith and family harmony. The father now seeks to recover, in the action on book, for the use and occupation of the land, for the personal property which passed to the son under the contract, and for the labor of himself and family, upon the ground that the son has violated the contract on his part. In regard to the wisdom of contracts like the present, it is not the business of the court to pronounce; but we must be satisfied in disposing of them as the law points out, whenever it is the misfortune to have questions arise upon them. Though several questions were discussed in the argument, there is no occasion to pass upon but one. The contract between these parties is *executory.* The real and per-

sonal estate, and the accruing services of the plaintiff and his family, were the consideration of the undertaking on the part of the son, and though it has been in part executed, yet, if there has been a breach of it, the remedy of the party injured sounds entirely in damages. The father could not rescind the contract, and recover in the general action of *indebitatus assumpsit*. It is a familiar principle that where there is a special contract remaining unexecuted, no general action will lie for the breach of it, and much less will the book action. The party injured is only entitled to his *damages*, and this, too, in a *special* action on the contract.

It is said, in argument, that this contract was *void* under the statute of frauds, and that hence the plaintiff stands upon the same ground as though no contract had been made. It is not, however, true that this contract, though required to be in writing under the statute of frauds, would be void. The statute does not declare such contracts void, but simply provides that no action shall be sustained on certain contracts unless evidenced by writing. The statute does not interfere with the substance of the contract, but throws a difficulty in the way of the evidence. Chitty on Contracts, 4. *Hamer v. Raymond*, 5 Taunt. 788. Though in cases where there is an *entire* agreement for the sale of *real* and *personal* estate the whole contract might be rendered inoperative as to both, by means of the statute, yet, in equity, though it may be otherwise at law, the contract will, in many instances, when partly executed, be upheld. Here the possession of the real estate has been delivered and taken under the parol agreement ; improvements have been made upon it by the son in faith of the agreement, and a part of the consideration paid by the means of his fulfilment of his contract for thirteen years. Chancery, in such case, will enforce the agreement, and it is not competent for the plaintiff to avoid the contract on the ground of the statute, and thereby sustain his action against the adverse party upon the ground that the contract could not be enforced against him, if he chose to avail himself of the statute to avoid it.

The judgment of the county court is affirmed.