# COUNTY OF WASHINGTON,

AT THE

## AUGUST TERM, 1877.

PRESENT:

HON. JAMES BARRETT,
HON. HOMER E. ROYCE,
HON. JONATHAN ROSS,       } ASSISTANT JUDGES.
HON. H. HENRY POWERS,

---

## ADAMS v. SMILIE.*

[IN CHANCERY.]

*Parol Evidence to Vary Written Contract. Statute of Frauds.
Estoppel. Payment. Mortgage.*

When the enforcement of a written contract according to the legal import of its
terms would be fraudulent and wrong, the rule that excludes parol evidence to vary
a written contract does not prevail in a court of equity.

Defendant sold and delivered stoves to the orator, for which the orator paid him a
thousand dollars in money, and executed and tendered to him a deed of certain
land that defendant agreed to, but would not take in payment of the balance.
*Held*, that the contract was fulfilled and performed by the orator, and nothing left
open for the Statute of Frauds to operate upon.

In faith of defendant's agreement to take the land as aforesaid, the orator received
said stoves and paid the $1,000 therefor, and did various things by way of clearing
the land of incumbrances, which otherwise he would not have done, nor have had
any motive nor interest in doing. *Held*, that the defendant was thereby estopped
from asserting the legal effect of a written contract, which provided generally that
the stoves should be "paid for on delivery."

* Tried at the August Term, 1875.

Adams *v.* Smilie.

Pursuant to agreement between the parties, said deed was put into the hands of F., to be delivered to defendant when the stoves were delivered according to contract. Afterwards the defendant directed F. to keep the deed for him until he had delivered the stoves, and then to deliver it to him, which F. agreed to do. After the stoves were delivered, F. offered the deed to defendant, who took it, but soon threw it down, and refused to keep it. *Held,* that F. was holding the deed as the depositary of both parties, according to their respective rights, and that after the stoves were delivered, he was holding it in right of the defendant, and was answerable to the defendant as such depositary, and that the defendant could not, by refusing to keep the deed, undo the effect of the transaction in relation thereto, but that it operated a satisfaction of the orator's obligation to pay the balance for the stoves.

The orator sold and conveyed to defendant one undivided half of certain real estate and, as part of the price, the defendant assumed the payment of one half of a mortgage thereon, the burden of the other half resting on the orator. Said mortgage also covered a house and lot that the orator was bound to see cleared therefrom, and for the clearing of which the land that the orator was to convey to the defendant in part payment for the stoves as aforesaid, was held. Said mortgage was foreclosed, and the defendant did nothing towards redeeming it. For the purpose of saving the property from that decree, the orator procured another to purchase it, and arranged that it should be conveyed to the orator after the decree became absolute. *Held,* that this operated a redemption by the orator, and left the defendant bound to reimburse his half of the redemption money.

APPEAL from the Court of Chancery.

The bill alleged, that on September 17, 1872, the orator and the defendant agreed together that defendant should deliver to orator ninety stoves on or before December 1, 1872, at such place in Waterbury, within fifty rods of defendant's foundry, as the orator might designate, at and for the price of $34 each for forty-three thereof, and $35 each for the remainder thereof, and that the orator should accept and receive the same at the prices aforesaid; that it was then and there agreed, that on delivery thereof, the orator should pay defendant a thousand dollars in money, and deliver to him a good warranty deed of a part of lot 26 in Moretown, at and for the price of $2,000; that said deed was to be duly executed and acknowledged by the orator and his wife, and deposited with Horace Fales, to be by him delivered to defendant, on delivery of the said stoves according to said agreement; that such a deed was drawn by the defendant himself, duly executed and acknowledged by the orator and his wife, on October 4, 1872, and by the orator immediately deposited with said Fales, pursuant to said agreement, with directions to deliver

the same to defendant when he delivered the stoves according to agreement; that after the deed was thus delivered to said Fales, the defendant related said agreement to said Fales, and directed him to keep said deed until he delivered the stoves, and then deliver it to him, which said Fales agreed to do ; that before defendant delivered the stoves, the orator paid him a thousand dollars in money, according to the agreement, and that on or about December 1, 1872, defendant delivered the stoves as agreed, and that immediately thereafter, said Fales offered and tendered said deed to defendant as agreed, but that the defendant refused to accept the same; that L. P. Poland had a mortgage on said lot of land, which the defendant insisted should be paid, and the land cleared from all incumbrance, and that the orator was compelled to and did hire the money, and clear the land from said mortgage ; and that on February 17, 1873, the defendant commenced suit at law against the orator, to recover the balance of the purchase money of said stoves above the thousand dollars, which suit was still pending. *Prayer*, for specific performance, and an injunction against prosecuting said suit at law, and for general relief.

The orator brought a supplemental bill, which alleged that said land, with other lands, was subject to a mortgage given by one Humphrey, and held by said Poland, whereon there was due about $3,000, whereof the defendant had knowledge, and which he knew to be the only incumbrance on the land, and which the orator agreed to and did remove from the land that he was to convey to the defendant as aforesaid; that the orator acquired title to said land from said Humphrey on May 9, 1870, by way of exchange for a house and lot in Waterbury that he then conveyed to said Humphrey ; that it was agreed between Humphrey and the orator that the orator should pay $2,200 of the Poland mortgage, and Humphrey the balance, and that on November 3, 1870, the orator procured Poland to divide his mortgage, and take one of $2,300 on the Moretown land, and one of $700 from Humphrey on the house and lot in Waterbury ; that said house and lot were formerly a part of the foundry property in Waterbury, and were, with the foundry, subject to a mortgage of $1,800

held by Mary Glisson, and that Humphrey's deed to the orator of the Moretown property was conditioned for the protection by the orator of said house and lot from the Glisson mortgage; that the title to said foundry became vested in the defendant, and the Glisson mortgage became and was, in law and equity, his debt to pay, and that so, as to him, the condition in Humphrey's deed was no incumbrance on the Moretown land, and that it was so understood by the parties, and that defendant never objected to the title of the Moretown land by reason of said condition ; that said foundry property was owned by the orator and one Moffitt, and that the orator conveyed one undivided half thereof to the defendant, said Glisson mortgage then being thereon as the defendant well knew, and that the defendant was to discharge the same in part payment of the purchase money of said property ; that on August 7, 1871, with defendant's knowledge and consent, Moffitt quit-claimed his interest in said foundry property to one Henry Smilie, the defendant's uncle, who took said deed for the defendant's benefit, with full knowledge of the Glisson mortgage ; that the defendant, though thereunto bound in law and equity, did not discharge said mortgage, but suffered the same to be foreclosed, he and the said Henry being parties to the petition, and the decree to become absolute, whereby the title vested in the said Mary, to the great damage of the orator ; that the orator, to protect the title to said foundry property and said house and lot, procured said Poland to purchase said decree; and on May 8, 1875, to give the orator a deed of said property, thereby releasing the orator from all claims by reason of said Glisson mortgage ; that there is now no incumbrance on said foundry property, nor said house and lot, and that the condition of said Humphrey's deed has been fulfilled, and the Moretown land freed from all incumbrance whatever. *Prayer*, that defendant be decreed to repay to the orator all money expended by him in the redemption of said Glisson mortgage, that an account thereof be taken, and for general relief.

The answer admitted the contract for the sale of the stoves, but alleged that it was in writing, and set it out in these words:

This agreement, made and agreed upon this 17th day of September, 1872, by and between D. K. Adams and M. E. Smilie, witnesseth, that said Smilie has this day sold to said Adams 43 No. 9 Vermont stoves, XXX, at $34 each, and 47 No. 9 Empress stoves, XXX, at $33 each ; and said Smilie has agreed to deliver said stoves XXX, by the 1st day of December, 1872 ; and said Adams agrees to have and receive said stoves of said Smilie at the above-mentioned prices, and pay for the same when delivered.                                M. E. SMILIE,
                                                  D. K. ADAMS.

and denied the other allegations of the bill, except that it alleged that at divers times before the making of said contract for the sale of said stoves, both the orator and said Fales applied to the defendant to purchase a certain piece of land in Moretown, and that the defendant told them he would take it in exchange for stoves ; that the orator represented said land to be worth $2,000, that the wood and timber had not been cut therefrom, that certain parties were about to erect a steam mill in the immediate vicinity thereof, which would greatly* enhance its value, that it contained 110 acres, and was free from all incumbrance, except a mortgage to said Poland ; that the defendant told the orator that if his representations were true, and the land worth $2,000, he would take it for stoves, but that he would not bargain for it until he had seen it and examined the records, nor until it was freed from all incumbrance whatever, and that thereupon all negotiations respecting said land ceased ; that subsequently the orator applied to the defendant as an attorney, to make out such papers, as when signed, would release Poland's mortgage on the land, and that on September 17, 1872, the defendant drew a quit-claim deed thereof for said Poland to sign ; that at divers times after negotiations between the orator and the defendant ceased, as aforesaid, the orator applied to the defendant to buy some stoves, but that nothing was said about land ; that finally, on September 17, 1872, after the making of said quit-claim deed as aforesaid, the orator wanted to purchase some stoves of defendant, and have defendant take said land in part payment therefor, and then repeated his said representations in regard thereto ; that the defendant told him he would not make any agreement concerning the

land, but would make a contract with him for the sale of stoves, and would go some time and see the land and examine the records, and if satisfied with the title and the price, would buy it; that the orator then requested the defendant to make a deed of the land, to be deposited with some third person, with a written agreement that defendant should have the land if, upon examination, he was satisfied of the truth of the orator's representations; that thereupon the defendant partly made a deed of the land, but that the deed was not completed, nor intended to be used, and that if the orator executed and delivered it to said Fales as alleged, he did so without the knowledge or consent of the defendant; and that the orator's representations in regard to said land were false and fraudulent. The answer to the supplemental bill set up the incumbrance of said land by the Poland mortgage and the condition in said Humphrey's deed thereof, and alleged that it never belonged to the defendant to pay but one-half of the Glisson mortgage, the other half thereof having been assumed by the said Moffitt, and that Moffitt and the orator were in law and equity bound to pay the same, and that by reason of its non-payment the defendant had suffered great loss; that the conveyance to Henry Smilie was not for the defendant's benefit, but was in payment of what Moffitt owed the said Henry, and that Moffitt was to pay half of the Glisson mortgage; that defendant applied to the orator to redeem that half of the Glisson mortgage that Moffitt had assumed, and that the orator at one time agreed to do so, but subsequently said he could not, and that it was finally agreed between them that the orator should pay the full amount of said mortgage, and pay a subsequent mortgage, and have a certain portion of the machinery in the foundry and the defendant a certain other portion thereof, and that, relying thereon, the defendant did not redeem said mortgage, and the orator not doing it, the decree became absolute. The answer set up and relied upon the Statute of Frauds.

The answers were traversed and testimony taken, and the case heard on bills, answers, traverse, and testimony, at the March Term, 1875, REDFIELD, Chancellor, and the bills dismissed, *pro forma*, with costs.

Appeal by the orator.

*L. L. Durant*, for the orator.

*M. E. Smilie, pro se.*

The opinion of the court was delivered by

BARRETT, J. It is found from all the evidence that the stoves, by the actual agreement between the parties, were to be paid for in the manner alleged by the orator, and that he paid $1000 in money, and duly tendered a good and sufficient deed of the land which the defendant was to have for the residue of the price of the stoves. The written contract is, that orator " agrees to have and receive said stoves of Smilie at the above mentioned price, and pay for the same when delivered."

In the defendant's suit at law, the rule of evidence would prevail that does not permit anything but the writing to show what were the terms of the contract. The orator, therefore, comes into a court of equity, to have it determined upon the actual and entire transaction, whether the defendant is entitled to hold him to the operation of the writing, according to the legal import of its terms, when made the ground and cause of action for its alleged non-performance, in a suit at law. In this view, and to this intent, the writing is not exclusive and definitive, but is only a fact in evidence, to be taken and considered in connection with all the other facts to which it is related in such a way as to be affected by them, touching the use which the defendant may rightfully make of it as against the orator.

The defendant cannot, in this case, stand upon that rule of evidence, as he was standing on it in his suit at law. The fact that he was thus standing on it in that suit, gave the occasion for the orator to come into a court of equity. It would seem strange if, when the attempt to enforce such a paper according to the legal import of its terms would be fraudulent and wrong, the face of the paper should be held conclusive upon the question of such fraud and wrong when raised in a court of equity.

Again : The Statute of Frauds does not preclude the orator from the remedy he seeks. He is not asserting a claim to an interest in land by virtue of a parol agreement. The defendant has

brought a suit at law against the orator, counting on a contract for stoves to be delivered to the orator, which he shows in writing, and claims to recover, according to its terms, for the breach of it, and is claiming to be paid in money, as the legal result of the contract, for what he claims as an unpaid balance. See *Smith* v. *Smith*, 14 Vt. 446. The orator received the stoves, and paid $1000 in money towards the price. For the residue of the price he executed and tendered to the defendant a deed of land in payment, which he claims the defendant was bound to receive in payment and satisfaction of such residue of price. If the orator is right in this, the contract was fulfilled and performed by the orator, as well as by the defendant, and so nothing is open for the Statute of Frauds to operate upon.

The object of the bill is to prevent the defendant from enforcing payment of $2000 in money, after he has been offered full pay in the manner in fact stipulated.

Again : in faith and reliance upon the agreement of the defendant to take the land in payment, the orator received the stoves, and paid the $1000, and did various things by way of clearing the land of incumbrances resting upon it, which, otherwise, he would not have done, and which he would have had no motive or interest in doing, had it not been for the agreement of the defendant to take the land in payment for the stoves. In this view, the familiar doctrine of equitable estoppel would require the defendant to be withheld from asserting the legal effect of the writing, as against the real agreement, and consequent acts, of the parties under it.

In such case, the court of equity will find the actual truth of facts, and accord effectual remedy against the attempted fraud which would result,—not by way of affirmatively enforcing the real contract, but by preventing the party from enacting bad faith, under cover of a writing drawn by himself, a lawyer, which, as we find, the orator was induced to sign in reliance on the defendfendant's representation that that was the proper way to draw it, to effectuate the bargain that had been made between them.

There is still another view. We find it proved, as alleged in the bill, that it was agreed by the parties, that the deed should be

put into the hands of Dr. Fales, who, when the stoves had been delivered according to the contract, was to deliver it to Mr. Smilie, and that it was accordingly put into Dr. F.'s hands, to be delivered as thus agreed, and after that, Mr. Smilie directed Dr. F. to keep the deed for him until he had delivered the stoves to the orator, and then to deliver the deed to the defendant, Smilie, and Dr. F. agreed so to do,—and that after the stoves had been delivered, Dr. F. carried the deed to the defendant and offered it to him, and he took it, but soon threw it down, and refused to keep it. In this view, Dr. Fales was holding the deed of the land as the depositary of the parties, according to their respective rights ; and, after the stoves had been delivered, he was holding it in the right of the defendant. He was answerable to the defendant as such depositary, and the orator had no right to recall or control it. When Dr. F. carried and offered it to the defendant, he could not, by refusing to keep it, and by throwing it down after having taken it from Dr. F., as we find from the testimony he did, undo the effect of the transaction as to the deed, as it had gone on pursuant to the agreement of the parties, down to the offering of it by Dr. F. to the defendant. It operated a satisfaction of the obligation of the orator to pay for the stoves, which the defendant could not go back upon and repudiate ; and thereupon be permitted to assert against the orator the enforcement of the contract of purchase according to the terms of the writing, by a suit at law.

It is fully within the power of a party to become satisfied of a money demand, in the forum of equity at least, by something besides the direct payment of money.

As to the supplemental bill, it suffices to say, that the orator sold and conveyed to the defendant one half of the foundry property, and, as part of the price, the defendant assumed the payment of one half of the Glisson mortgage, which mortgage covered said foundry property and also the house which was conveyed by the orator to Humphrey in exchange for the Moretown farm, which farm was to be deeded to the defendant free of incumbrance, in part payment for stoves, as above shown. The title to said farm, as conveyed by Humphrey to the orator, was subjected to the clearing of said house from the incumbrance of the Glisson

mortgage. In order to free the title of the Moretown farm from this hitch, the Glisson mortgage must be paid. It was the duty of the defendant to pay one half of it, as purchase money of the foundry property. The orator had the burden of the other half. Said mortgage was foreclosed, and the defendant did nothing towards redeeming it. For the purpose of saving the property against that decree, the orator had procured Judge Poland to purchase it, and under an arrangement that the property should be conveyed to the orator after the decree had become absolute. This operated a redemption by the orator of the entire mortgage, and left the defendant bound to reimburse his half of the redemption money.

As the result of the whole case, the following mandate is made :

The decree dismissing the bill is reversed, and it is considered and adjudged that said defendant be perpetually enjoined from prosecuting said suit pending in the County Court, and from attempting in any manner to enforce payment of the balance claimed by him for said stoves, otherwise than by receiving the deed set forth in said bill and exhibited in evidence of said land in Moretown described and conveyed by said deed, which said deed is to be delivered to him on request.

It is further considered and adjudged, as to the matter of said supplemental bill, that said defendant pay to the orator the sum of                         being one half of the sum due and costs on the foreclosure of the Glisson mortgage, April 1, 1874, with interest thereon from said April 1, 1874.

The cause is remanded to be disposed of as above, without prejudice to any right which the orator may have by virtue of the mortgage to him of the foundry property so called, executed by the defendant August 24, 1869, conditioned for the payment of one half of said Glisson mortgage—as set forth in the defendant's answer to said supplemental bill. The orator to recover costs.