TIMOTHY P. REDFIELD v. CARLISLE J. GLEASON.

*Written Contract.  Parol Evidence to Vary.  Specific Performance.  Co-tenants.*

1. Parol evidence may be received to show a contemporaneous oral agreement in addition to a written contract.

2. When the orator prays specific performance of a written contract, and the court may and does receive parol proof of some variation of or addition to the written instrument, contemporaneous with its execution, specific performance of the contract, as modified, may be decreed without a cross-bill.

3. A partner, claiming compensation for additional services about the partnership matters after dissolution, assumes the burden of proof as to that fact.  The master having reported that from the evidence he could not so find, the item was disallowed.

4. Compensation cannot be allowed one co-tenant as against another for services in caring for the joint property, except in virtue of some contract to that effect, express or clearly implied.

This was a suit in chancery, and was heard at the September Term, 1886, Washington County, upon bill, answer, master's report and exceptions of both parties thereto.  Powers, Chancellor, dismissed the bill with costs.  The orator appeals.

The bill set forth in substance that the orator and defendant were on the 11th day of August, 1876, the owners and tenants in common of certain premises in the village of Montpelier known as Riverside; that upon said day the orator and defendant executed a written agreement for the sale of the orator's interest therein to the defendant for a stipulated sum, of which $3,250 was to be paid in the notes of the defendant secured by mortgage on the property, a part of the balance in cash and the rest by transferring to the orator the one-fourth interest of the defendant in certain notes secured by mortgage on the "Fairman Block," and standing in the name of the orator; that the orator on his part had always been ready and willing to carry out the terms of the agreement, and had executed the necessary conveyances thereto, but that the defendant had refused to go forward with the agreement; praying for a specific performance of the contract.

Redfield *v.* Gleason.

The defendant answered, admitting the execution of the written memorandum with reference to the Riverside property, but setting forth that he and the orator had for a long time been partners, and that at the time of the making of such memorandum there were many items of partnership deal unsettled between them, upon a fair adjustment of which there would be a large sum due the defendant, and that it was the understanding of the parties then and as a part of the trade evidenced by said memorandum that whatever balance was so found due should be applied upon this Riverside contract. That in September, 1876, the orator abandoned possession of the premises, and that he, the defendant, had managed the same ever since.

With reference to the understanding between the parties as to the payment of the purchase price for the Riverside property the master found from parol evidence, received against the objection and exception of the orator, the following facts :

" At the time this contract was made there were certain notes and accounts belonging to the defendant and the orator, jointly, that had accrued from their law partnership, and from investments made by them while they were such partners, and some accounts that had accrued upon the running of Riverside that had not been divided and adjusted between them. Previous to that time the defendant had several times called the orator's attention to the fact that there were unsettled matters between them but without stating specifically what they were, and claimed that the orator was indebted to him. For the purpose of showing that the defendant had insisted on a settlement with the orator, two letters, one written by him to the orator, April 29, 1875, and the other written by him, July 11, 1876, to Hiram Atkins, which lastletter was delivered to the orator, were offered in evidence by the defendant's counsel and received subject to the orator's objection and exception. Exclusive of these letters, however, I find that the defendant had several times asked the orator to settle their accounts. On said August 11th, after several offers had been made by the parties to each other to buy and sell their interest in Riverside, the orator offered to sell his

interest to the defendant for $5,250. The defendant took a little time to consult his wife and consider the offer, when he returned to the orator's room and said to him, that if he would settle with him so that there would be no differences between them, if he would settle all their unsettled accounts and clear up everything he would pay him $5,250 for his interest in the property, to which the orator assented.

The parties knew that there were unsettled matters between them on account of rents received and disbursements made by them in respect to said property, and also on account of their law and other partnership business, some of which matters were discussed at the time, but there was no enumeration of their unsettled accounts, and there was no understanding arrived at as to what the final balance would be on a settlement, nor had they the means then at hand of ascertaining such balance, though the defendant had before that time claimed to the orator that the latter was indebted to him, and the orator had reason to expect there would be a balance found against him if he retained the Shean notes, which he had had several years and collected in part. The defendant had for a long time desired a full settlement, but the parties met at this time for the specific purpose of severing, if practical, their interests in the Riverside property, and when they had agreed upon this they put their agreement in writing. It was suggested by the orator that as the contract related to real estate there had better be a memorandum made of it, and he drew it as they had agreed, stating the terms of payment which were to include an assignment of the defendant's one-fourth interest of the Fairman mortgage to the orator. But I find that this memorandum was made and executed with the mutual understanding and agreement between the parties that they should proceed as soon as practicable to settle all their matters of difference, and that whatever difference should be found due the defendant should be applied on said price of Riverside."

The master took an accounting between the parties, upon which the defendant presented the four following items among others :

1. Services in settling partnership law business, $500.
2. Services in constructing Riverside, $500.
3. Services in caring for Riverside, $200.
4. Collecting Brigham notes, $100.

Considering the items in the above order, these facts appeared.

1. The parties were equal partners in the practice of law from January, 1841, to Sept. 1st, 1869. This charge was for closing up the partnership matters. The report found:

" The law partnership was dissolved in September, 1869, under an agreement that the cases then in County and Supreme Court should remain the property of the parties jointly until they were disposed of. From that time until December, 1870, when the orator was elected judge, they both attended to the trial of their cases, and the settlement of their accounts. The defendant succeeded to the business of the firm, whatever that was worth. On the other hand after December, 1870, the disposition of the cases and the collection of the accounts fell mainly to him to perform, but there was not sufficient evidence as to the amount of labor performed in excess of the orator's to enable me to make any finding on this item. There was no agreement between him and the orator that he should be paid for such services ; he never made any charge therefor except the minute in pencil, on ex. 7, and the orator had no notice of any such charge, or of an intention of defendant to make any charge for the service until defendant presented him with ex. 7, at their interview of Sept. 1, 1876, and claimed he ought to be allowed something on it."

2. As to this item the master reported :

" Each party claimed that the other induced him against his will to engage in this enterprise. It is immaterial to determine which was the over-persuaded party. They finally entered upon the enterprise by mutual agreement. The defendant was much better fitted to take charge of such work than was the orator, as the latter well knew. He told the defendant that he must take the supervision of the work, and when they got through they would do what was right about it. The defendant made a contract for

the labor. He bought and provided all the lumber and other materials for the building, a considerable part thereof being obtained from parties on debts which they owed Redfield & Gleason. The work was going on for nearly two years before its conclusion in October, 1872. The defendant devoted a large amount of time to the work. The first contractor failed to perform his contract, and the defendant pursued him and recovered $200, as damages, and·made a contract with another party. He expected compensation for his services and the orator had reason to expect to be charged therefor; but the defendant made no actual charge on any book until he made the minute of his charges in pencil on ex. 7. I allow this charge of $500, subject to the opinion of the court. upon all questions of law that may arise thereon."

3. The master reported :

" The defendant's charge of $200 for care of the property, renting the same, supervising an alteration in the barn, and "L". part thereof, I disallow as not sustained by the evidence. After the house was completed each party assumed the rental of certain rooms, and they kept a man to take care of the premises. I have no doubt that the defendant had more to do about the care of the property than the orator, but how much more I am unable to find, and there was no agreement between him and the orator that he was to be paid for such service and the latter had no reason to expect any charge therefor."

4. As to this charge, the report was as follows :

" These notes were purchased by the parties while they were in partnership, as a business investment for $1800, and afterwards sold for $2400, upon their endorsement of them. After the dissolution of the partnership and the orator had become a judge of the court, the defendant discovered that the indorsee of the notes was relying on the endorsement and collecting neither the principal nor the interest thereon, while the mortgage security was fast decreasing in value. The defendant took the notes in charge, made collections on them, foreclosed the mortgage and by his diligence saved the endorsers from loss.

By request I report that the parties at that time lived only a short distance apart in Montpelier, that the defendant did not inform the orator that this service was being done, that the orator never promised to pay for the same, and that the defendant never made a charge therefor on book. I further find that at this time the parties were not on friendly terms, and had very little communication with each other; also, that the defendant expected compensation for this service when his accounts with the orator should be finally settled, but he did not make this known to the orator until the accounting."

*J. A. Wing, W. W. Heaton,* and *J. W. Lucia,* for the orator.

This was a contract perfect in itself. No principle of law is better settled than that such a contract cannot be modified, or varied by parol, there being no ambiguity about the instrument itself and no fraud connected with its execution. *Abbott* v. *Choate,* 47 Vt. 53; (in chancery.) *Morse* v. *Low,* 44 Vt. 561; *Corse* v. *Peck,* 5 Eastern Reporter 876; see Best on Evidence, vol. 1, s. 22, p. 424; Greenleaf on Evidence, ss. 321, 275, 276, 277; Addison on Contracts, vol. 1, s. 242, p. 364; *Perkins* v. *Young,* 92 Mass. 16 Gray 389; *Bryon* v. *Mining Co.,* Pacific Reporter, vol. 14, No. 15, 859; *Bradley* v. *Bentley,* 8 Vt. 243; *Reed* v. *Wood,* 9th Vt. 285; *Dixen* v. *Blandin,* 58 Vt. 689; *Morse* v. *Low,* 44 Vt. 561; *Ripley* v. *Page,* 12 Vt. 353; *Isaacs* v. *Elkins,* 11 Vt. 679.

Again this was a contract which by law must be in writing. If the defendant is allowed to modify this contract as he asks to by parol he virtually proves a parol contract for the sale of this real estate. *Whitcomb* v. *Munson,* 8 Eastern Reporter 563; *Ide* v. *Stanton,* 15 Vt. 685; *Dana* v. *Hancock,* 30 Vt. 616; see *Simonavich* v. *Wood,* 13 North Eastern Rep. 391; *Smith* v. *Burton,* 59 Vt. 408.

Suppose the parol evidence properly received, still the defendant can have no affirmative relief without a cross-bill. *Simonds* v. *Brown,* 18 Vt. 231.

This defendant could not sustain a cross-bill to have a balance his due on the partnership transactions offset against the pur-

(15)

chase price of Riverside. *Cross* v. *D' Valle*, 1 Wall., U. S. 5; *Slosson* v. *Wright*, 14 Vt. 208; *Rutland* v. *Page*, 24 Vt. 181; Story's Equity Pl., ss. 389, 390, 393; *Piggott* v. *Williams*, 6 Maddock, 67; *Ayers* v. *C.*, 17 How., U.S. 592; *Ex parte R. R. Co.*, 95 U. S. 221. Read from 226. *Munner* v. *Buck*, 28 Federal Reporter 161, 163; *Simonds* v. *Brown*, 18 Vt. 231.

As to the defendant's charges for services in winding up the partnership affairs and about the Riverside property and Brigham notes, these were all partnership matters, and one partner or one co-tenant cannot charge another for services about the common property, without clear proof of some contract to that effect. In this case we insist that no such contract is made out. *Franklin* v. *Robinson*, 1 Johns. Ch. 158; *Burden* v. *Burden*, 1 Vesey & B. 170; Story on Partnership, ss. 182, 185, 186 and 321; 5 Waits' Actions and Defenses, 144; *Amer.* v. *Downing*, 1 Bradf. (N. Y.) 321; *Beatty* v. *Wray*, 19 Penn. St. 516; *Brown* v. *McFarland*, 41 Penn. St. 129; *Shinkle* v. *Dana*, 118 Mass. 236.

*Hard & Cushman*, for the defendant.

Parol testimony as to the general agreement between these parties, contemporaneous with, and of which the written memorandum formed a part, was properly received. 52 Vt. 277; *Adams* v. *Smilie*, 50 Vt. 1, 7; *Taylor* v. *Gilman*, 25 Vt. 411; *Jervis* v. *Berridge*, L. R. 8 Chan. App. 351 (5 Eng. R. 581); *Martin* v. *Pycroft*, 2 DeG. McN. & G. 785; *Walker* v. *France*, (Pa. March, 1886) 2 Cent. Rep. 781; *Best* v. *Snow*, 2 Sandf., Ch. 298; *Keough* v. *McNitt*, 6 Minn. 213; *Ruggles* v. *Swanwick*, *id.* 526; 2 Pom. Eq., s. 854, note 860; Abb. Tr. Ev. 294; 1 Story Eq. Jur., ss. 161, 769, 770; 1 Greenl. Ev., s. 284 a; *Webster* v. *Hodgkins*, 5 Fost. 128, 143; *Allen* v. *Pink*, 4 M. & W. 140; *Griffam* v. *Pierce*, (Mass. 1887) 3 N. E. Rep. 424.

The objection that the written memorandum should not be enforced because it does not contain the entire contract is properly taken by answer. A cross-bill is not necessary. 1 Story Eq. Jur., s. 161; 2 Pom. Eq. s. 860; *Bradford* v. *Union Bank*, 13 How., 57, 66, 69, (Bk. 14 L. Ed. 49).

The court has power to make a decree upon the pleadings as they stand, which will be entire justice to both parties.    1 Story Eq. Jur., s. 161; 2 Pom. Eq., s. 860; *Bradford* v. *Union Bank, supra.*

The defendant should be allowed a reasonable sum for caring for the Riverside property.    *Martin* v. *Perry*, in Wash. Co., 1878, unreported.

The opinion of the court was delivered by

TAFT, J.    1.    The authorities in this State, *Taylor* v. *Gilman*, 25 Vt. 411, and *Adams* v. *Smilie*, 50 Vt. 1, justified the ruling of the master in admitting the parol testimony offered by the defendant to show that at the time of the execution of the written contract, it was agreed by parol that, upon a settlement of their accounts, the balance due the defendant should be applied upon the purchase price of the Riverside property.

2.    The orator insists that if parol evidence was properly admitted the defendant cannot have relief without a cross-bill, and that even under a cross-bill, partnership claims cannot be set off against the price of the Riverside property.    This is a suit for the specific performance of a written contract; the defendant sets up in his answer a verbal stipulation entered into at the time of the execution of the contract and as a part of it. The case in respect of the objection named comes clearly within the rule stated by Pomeroy in his work on Eq. Jur., s. 860, *viz.*: "If the plaintiff alleges a written agreement, and demands its specific performance, and the defendant sets up in his answer a verbal provision or stipulation, or variation omitted by mistake, surprise, or fraud and submits to an enforcement of the contract *as thus* varied, and clearly proves by parol evidence that the written contract modified or varied in the manner alleged by him, constitutes the original and true agreement made by the parties, the court may not only reject the plaintiff's version, but may adopt that of the defendant, and may decree a specific performance of the agreement with the parol variation, upon the mere allegations of the answer, without requiring a cross-bill."    It is nothing but the enforcement of a single con--

tract and upon principle a cross-bill would be unnecessary and out of place.

3. Several questions arise upon the master's report in reference to certain charges of the defendant for personal services in caring for the property owned by him and the orator jointly, and closing up their partnership business. The defendant charged five hundred dollars for his services, in settling up the partnership business, rendered after the dissolution. The master reports that there was not sufficient evidence as to the amount of labor performed by him in excess of the orator's to enable him to make any finding on this item. If he performed no more labor than the orator did in the same matter he is not entitled to any allowance. He fails to show that fact and the item was properly disallowed.

4. As to the items of five hundred dollars for services in building Riverside, two hundred dollars for the care of it after its construction and supervising alterations in it, and one hundred dollars for services in collecting the Brigham notes, it is necessary to consider the relations of the parties in respect to this property. It was not strictly partnership property, in respect to which, their partnership had been dissolved. Their co-partnership embraced simply the practice of the law and ceased before Riverside was built, and the Brigham notes were purchased as an investment, whether with partnership funds or not does not appear; but neither the ownership of the Riverside, nor the Brigham notes were within the scope of the partnership business; they were joint owners; tenants in common of the property; and their right to charge each other for their personal services in the care of their joint property must be governed by the well known rules applicable in such cases. Freeman on Co-tenancy, s. 260, states the rule as follows : " Compensation for his services in managing or taking care of the property is never awarded to a co-tenant, except as a result of a direct agreement to that effect; or unless, from all the circumstances of the case, the court is satisfied of the existence of a mutual understanding between the parties that the services rendered by one should be paid for by the others. In this respect the law of co-tenancy is,

like that of partnership. A partner in taking care of and managing the property of the concern is performing no more than his duty, and is therefore entitled to no compensation from his partners." And the exception to this rule is where one co-tenant performs services which neither the law, nor his partnership obligations, nor the relation of co-tenancy imposed upon him. *Fuller* v. *Fuller*, (Fla.) 2 So. Rep. 436 ; *Lewis* v. *Moffett*, 11 Ill. 392 ; *Levi* v. *Kerrick*, 13 Iowa 344 ; and see numerous cases cited in Freeman on Co-tenancy, s. 260. These items should not be governed by the law relating to the services performed by a partner after the dissolution of a firm. Applying the rule above stated to the items under consideration, it is clear that the defendant should be allowed the item for superintending the construction of Riverside. It was agreed that he should perform the services, and that the orator should do what was right about it; it must have been the mutual understanding of the parties that the defendant should be paid, and the master properly allowed the item. It is equally as clear that the items for the care of Riverside and the Brigham notes should be disallowed. The orator never agreed to pay for the services, and the defendant performed none except such as were required of him as a co-tenant; rendered none except such as were imposed upon him by law; such as renting the property, looking after the repairs, collecting the rents, notes and other like duties.

5. The orator never paid the item of fifty dollars charged by him for expenses, on the occasion of an interview with Smith Ely in the city of New York. The master properly disallowed it.

No other questions are insisted upon by the parties. The orator therefore is entitled to a decree that upon payment by the defendant of the sum of fifteen hundred and fifty-nine dollars and ninety-seven cents, with interest since the second Tuesday in September, 1886, within such time as may be fixed by the chancellor, the orator shall convey to the defendant, free from encumbrance, an undivided half of the Riverside property, described in the bill and in default of such payment, the orator to have a decree according to the prayer of the bill.

*Decree reversed and cause remanded with mandate.*